**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Allison Sharits, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Dustin Dernier; Infinity Software; Forest Hill Account Management Inc.; United Portfolio Management; Steve Christensen; Anthony Reider; Cydni Weddell; April Herrick; Ryan Kills A Hundred; Kristi Beitz; David Ross; Johnathan Schrader Sr.; and John Does 1 – 40,<br><br>Defendants. | **Case No.: 1:25-cv-11944** |

**TRIBAL DEFENDANTS' AND DERNIER'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, DISMISS COMPLAINT**

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. REPLY TO PLAINTIFF'S MISREPRESENTATIONS OF FACT ..... 2

III. ARGUMENT ..... 3

A. Plaintiff's Claims Must be Arbitrated ..... 3

1. The Arbitration Clause Delegates the Resolution of Plaintiff's Claims to Arbitration ..... 3

2. The Prospective Waiver Doctrine Does Not Apply ..... 5

i. The Agreement Does Not Waive Plaintiff's Federal Statutory Rights ..... 6

ii. The Prospective Waiver Doctrine Does Not Apply to State Rights ..... 7

iii. Plaintiff's Claim that the Governing Law Provision in the Loan Agreement Waives Her Federal Rights Under RICO Must Be Decided by the Arbitrator ..... 14

B. The Doctrine of Ex Parte Young Does Not Apply to Alleged Violations of State Law, Nor Can It Be Supported by a Claim for Injunctive Relief under RICO ..... 17

1. The Doctrine of Ex Parte Young Does not Apply to State Law Claims ..... 17

2. RICO Does Not Provide a Private Right of Action for Injunctive Relief ..... 18

C. Dernier is Protected by Tribal Immunity as an Officer of FMS ..... 19

D. Plaintiff Fails to State a RICO Claim Against Tribal Defendants and Dernier ..... 20

1. The Terms of Plaintiff's Loan Agreement Invalidate the Lynchpin of Plaintiff's RICO Claims that Plaintiff's Loan is an "Unlawful Debt" ..... 20

2. The RICO Claims Should be Dismissed because Plaintiff Fails to Plead that Mr. Dernier or the Tribal Defendants Directed the Alleged RICO Enterprise ............................ 21

3. Plaintiff's RICO Claims against Mr. Dernier and the Tribal Defendants should be Dismissed for Failure to State a Claim under Rule 12(b)(6). ............................................... 23

IV. CONCLUSION ........................................................................................................ 24

CERTIFICATE OF SERVICE ...................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v Pyett*,
556 U.S. 247 (2000) .......... 8, 16

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) .......... 18, 19

*American Express v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 7

*Andresen v. IntePros Fed., Inc.*,
240 F. Supp. 3d 143 (D.D.C. 2017) .......... 14

*Arazie v. Mullane,*
2 F.3d 1456 (7th Cir. 1993) .......... 21

*Asian Americans Advancing Just.-Chicago v. White*,
No. 1:20-CV-01478, 2021 WL 12318991 (N.D. Ill. Mar. 25, 2021) .......... 18

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) .......... 7, 8

*Bassett v. Mashantucket Pequot Museum & Rsch. Ctr. Inc.*,
221 F. Supp. 2d 271 (D. Conn. 2002) .......... 19

*Baugus v. Brunson*,
890 F. Supp. 908 (E.D. Cal. 1995) .......... 19

*Billie v. Coverall N. Am., Inc.*,
444 F. Supp. 3d 332 (D. Conn. 2020) .......... 14

*Breakthrough Mgt. Group, Inc. v. Chuckchansi Gold Casino and Resort*,
629 F. 3d 1173 (10th Cir. 2010) .......... 19, 20

*Bridges v. Raines*,
2025 WL 3565343 (WDNC 2025) .......... passim

*Butler v. ATS Inc.*,
2021 WL 1382378 (D. Minn. Apr. 13, 2021) .......... 14

*California v. Del Rosa*,
No. 2:23-CV-00743-KJM-SCR, 2024 WL 4819459 (E.D. Cal. Nov. 18, 2024).......................................18

*Davis v. Littell*,
398 F.2d 83 (9th Cir.1968)........................................................................................ 19

*Dillon v. BMO Harris Bank, N.A.*,
856 F.3d 330 (4th Cir. 2017)................................................................................ 11, 16

*DIRECTV v. Imburgia*,
577 U.S. 47 (2015) ............................................................................................... 9, 10

*Doctor's Assocs., LLC v. Tripathi*,
794 F. App'x 91 (2d Cir. 2019)..................................................................................... 12

*Dunn v. Global Tr. Mgt*,
2024 WL 4379966 (11th Cir. 2024)................................................................................. 5

*Fahy v. Minto Dev. Corp.*,
722 F. Supp. 3d 784 (N.D. Ill. 2024) ............................................................... 12, 13

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013)..................................................................................... 12

*Fitzgerald v. Wildcat*,
687 F. Supp. 3d 756 (W.D. Va 2023) ........................................................................ 12

*Frankel v. Citicorp Ins. Servs., Inc.*,
No. 11-cv-2293, 2014 WL 105185550 (E.D.N.Y. Aug. 12, 2014) adopted by, 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015) ..................................................................... 14

*Gibbs v. Haynes Invs., LLC*,
967 F.3d 332 (4th Cir. 2020)..................................................................................... 11

*Gibbs v. Sequoia Cap. Operations, LLC*,
966 F.3d 286 (4th Cir. 2020)...................................................................................... 11

*Gingras v. Think Finance, Inc.*,
922 F.3d 112 (2d Cir. 2019)....................................................................................... 12

*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*,
927 F.2d 988 (7th Cir. 1991)...................................................................................... 21

*Ham v. CarMax Auto Superstores, Inc.*,
No. 2024 WL 2093655 (D.N.M. May 9, 2024) ........................................................ 13

*Hamilton v. O'Leary,*
976 F.2d 341 (7th Cir. 1992)......................................................................................... 21

*Harris v. FSST Mgt. Servs. LLC*,
686 F. Supp. 3d 734 (N.D. Ill 2023) ........................................................... 1, 4, 5, 12

*Harris v. W6LS, Inc.*,
No. 23 CV 16429, 2024 WL 2319716 (N.D. Ill. May 22, 2024) *appeal pending*, Case No. No. 24-2056 (7th Cir.) (argued Feb. 12, 2025) ....................................................................... 9, 12

*Hayes v. Delbert Servs. Corp*.,
811 F.3d 666 (4th Cir. 2016)......................................................................................... 10

*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021)......................................................................................... 10

*Johnson v. Opportunity Fin., LLC,*
No. 3:22-CV-190, 2023 WL 2636712 (E.D. Va. Mar. 24, 2023) ............................... 13, 15, 16

*Keller v. About, Inc*.,
No. 21-CV-228, 2021 WL 1783522 (S.D.N.Y. May 5, 2021)................................................ 14

*Keyes v. Ayco Co., L.P.*,
No. 117CV00955, 2018 WL 6674292 (N.D.N.Y. Dec. 19, 2018)……………………………14

*McDonald v. Cash Call, Inc*.,
883 F.3d 220 (3d Cir. 2018)......................................................................................... 11

*MCI Telecommunications Corp. v. Illinois Bell Tel. Co*.,
222 F.3d 323 (7th Cir. 2000)......................................................................................... 17

*Michigan v. Bay Mills Indian Cmty*,
572 U.S. 782 (2014)......................................................................................................18

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,
163 F.3d 449 (7th Cir. 1998)......................................................................................... 21

*National Organization for Women, Inc. v. Scheidler*,
267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003).................... 18, 19

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)....17

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....1, 4, 5

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)....22

*Rivas v. Coverall North America, Inc.*,
2024 WL 1342738 (9th Cir. Mar. 29, 2024)....12

*Smith v. Bd of Directors of Triad Mfg., Inc.*,
13 F.4th 613 (7th Cir. 2021)....10

*Smith v. W. Sky Fin., LLC*,
168 F. Supp. 3d 778 (E.D. Pa. 2016)....13

*Stutler v. T.K. Constructors, Inc.*,
448 F.3d 3436 (6th Cir. 2006)....12

*Torres v. CleanNet, U.S.A., Inc.*,
90 F. Supp. 3d 369 (E.D. Pa. 2015)....14

*United Food & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013)....23

*Viking River Cruises v. Moriana*,
596 U.S. 639 (2022)....8, 9, 12

*Vill. of Orland Park v. Pritzker*,
475 F. Supp. 3d 866 (N.D. Ill. 2020)....17

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
515 U.S. 528 (1995)....5, 15, 16

*Walton v. Uprova Credit LLC*,
722 F. Supp. 3d 824 (S.D. Ind. 2024)....passim

*Whirlpool Financial Corp. v. GN Holdings, Inc.*,
873 F. Supp. 111 (N.D. Ill. 1995) (dismissing action), *aff'd,* 67 F.3d 605 (7th Cir. 1995)....21

*Williams v. Medley Opportunity Fund II, LP*,
965 F.3d 229 (3rd Cir. 2020)........................................................................................... 11

*Williams v. Opportunity Fin., LLC*,
No. 24-CV-09730, 2025 WL 2300296 (N.D. Ill. July 17, 2025)...................................... 15, 16

**Statutes**

Federal Arbitration Act , 9 U.S.C. §§ 1-16 ..........................................................................passim

15 U.S.C. §§ 1601 et seq............................................................................................................. 6

Racketeer Influenced and Corrupt Organizations Act (RICO)18 U.S.C §§ 1961 - 88..........passim

**Rules**

F.R.C.P. Rule 12(b)(6)......................................................................................................... 23, 24

**Other Authorities**

5 Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 2d* § 1327 (2d ed.
1990)....................................................................................................................................... 21

## I. INTRODUCTION

In Opposition to Tribal Defendants' and Dernier's Motion to Compel Arbitration, or in the Alternative Dismiss, Plaintiff ignores that the delegation clause in the Arbitration Agreement at issue broadly delegates to the arbitrator the resolution of all disputes, including the disputes raised in Plaintiff's Complaint. Plaintiff does not raise a specific challenge to the delegation clause, however, and as such, her claims must be decided by the arbitrator in the first instance under *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 b (2010). Plaintiff mistakenly relies on *Harris v. FSST Mgt. Servs. LLC*, 686 F. Supp. 3d 734 (N.D. Ill 2023) in an effort to sidestep *Rent-a-Center*, because unlike the agreement at issue, *Harris* involved an agreement that did not expressly apply federal law and granted the tribal court exclusive authority to review an arbitration award. *Harris,* at 740. Moreover, the Eleventh Circuit has recently held that an identical challenge to a tribal lending agreement must be arbitrated.

Plaintiff's attempt to invoke the prospective waiver doctrine to avoid arbitration also fails, because federal appellate courts, and the vast majority of federal district courts, hold that doctrine only applies to waivers of federal statutory rights, not state statutory rights. Moreover, Plaintiff's claim that the Arbitration Agreement is unenforceable because the choice of law provision limits her ability to bring RICO claims for collection of an unlawful debt has also been rejected federal courts that have addressed this issue. Accordingly, Plaintiff's claims against the Tribal Defendants and Dernier must be arbitrated.

As set forth in Tribal Defendants' and Dernier's opening brief, in the event that the Court declines to compel arbitration, Plaintiff's claims must be dismissed because the claims are barred by tribal sovereign immunity. Plaintiff's reliance on the doctrine of *Ex parte Young* is futile, because RICO does not authorize a private right of action for injunctive relief, and the *Ex parte Young* doctrine does not apply state law claims.

Plaintiff's claims against Dernier for damages must also be dismissed because, as an officer of an arm of the Tribe, Dernier is also protected by the Tribe's immunity regardless of whether he is a tribal member. Moreover, the effect of a judgment against Dernier would be to destroy the Tribe's ability to operate or manage its lending business, which is necessary to the Tribe's ability to provide essential programs and services for its members. Thus, the claims against Dernier are effectively against the Tribe itself, and are barred by immunity.

In addition, in the event that the Court declines to compel arbitration, Plaintiff's RICO claims must be dismissed because 1) the alleged "unlawful debt" is not unlawful under the terms of the Loan Agreement, which applies tribal and federal law, not Illinois law; 2) Plaintiff fails to plead that the Tribal Defendants or Dernier directed the "RICO enterprise" as defined in the Complaint, and 3) Plaintiff does not sufficiently allege a violation of RICO under 18 U.S.C. 1962(c), and Plaintiff therefore cannot establish a violation under Section 1962(d) under Seventh Circuit precedent.

For these reasons and others set forth in Plaintiff's Motion and Memorandum in support thereof, Plaintiff's claims against the Tribal Defendants and Dernier must be arbitrated, or in the alternative, dismissed.

## II. REPLY TO PLAINTIFF'S MISREPRESENTATIONS OF FACT

Plaintiff asserts, based on mere speculation, that there are "non-tribal schemers" involved in the operation and management of FMS. Not so. From the beginning, FMS has been wholly owned and operated by the Tribe and FMS employees. There has never been any third party, outside individuals, or "non-tribal schemers" involved in the management of FMS. The Tribe, through the power of the Executive Committee to manage the Tribe's economic affairs, established FMS under the Tribe's Limited Liability Company Code. Declaration of Anthony Reider ("Reider Decl."), ECF No. 35-1 at ¶ 5. The FMS Board of Directors is comprised of the Tribe's Executive

Committee, which delegated its day-to-day management to its executives that are solely employed by FMS. *Id*. at ¶ 5, 6. FMS has never had any outside investors, as 100% of the capital used for the establishment and initial operating costs was provided for by the Tribe, and no outside funding has ever been used for the continued operation of FMS. *Id*. at ¶ 7. All profits inure to the Tribe to assist with the Tribe's operations, expenditures, and social welfare programs. There are no profits that go to imaginary "non-tribal schemers" as speculated by Plaintiff. *Id*. at ¶ 15.

Additionally, Plaintiff has not suffered any actual monetary damages. Plaintiff repaid less than the principal amount back on her loan, repaying only $290.05 out of the $600 FMS loaned to her. Declaration of Steve Christensen, ("Christensen Decl."), ECF No. 35-2 at ¶ 6. As such, Plaintiff has not sustained any damages.

## III. ARGUMENT

### A. Plaintiff's Claims Must be Arbitrated

#### 1. The Arbitration Clause Delegates the Resolution of Plaintiff's Claims to Arbitration

The Arbitration Agreement at issue requires arbitration of all "disputes," and further delegates to the arbitrator the authority to decide all "disputes," which are defined broadly, in relevant part, as:

> For purposes of this arbitration provisions and this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (i) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Agreement, the validity, enforceability, applicable law, and/or scope of this Agreement, the agreement to arbitrate all disputes relating directly or indirectly to the signing, validity, enforceability, unconscionability, applicable law, and/or scope of the agreement to arbitrate all disputes pursuant to this Agreement, and any claim or attempt to set aside the Agreement . . ..

Christensen Decl., ECF No. 35-2, Ex. A PageID # 356-357 ¶ 10(b). Plaintiff does not raise a specific challenge to the above delegation clause, but instead asserts that, because the Governing

Law provision in the Loan Agreement applies tribal law and federal law, it precludes the arbitrator from applying Illinois law, and therefore the prospective waiver doctrine renders the entire agreement, including the delegation clause, unenforceable. Pltf's Mem. Opp. Mtn to Compel, ("Pltf's Opp'n") ECF No. 42 at 11-16. The Supreme Court has squarely rejected Plaintiff's argument, holding that, where, as here, a plaintiff's challenge to an arbitration agreement is not "*directed specifically*" to the delegation provision, but instead is directed to the agreement as a whole, the issue of arbitrability must be decided by the arbitrator, not the court. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) ("unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

Plaintiff attempts to sidestep *Rent-A-Center* by relying on *Harris v. FSST Mgt. Servs. LLC*, 686 F. Supp. 3d 734 (N.D. Ill 2023). *Harris* has no application here, because *Harris* involved an agreement that is vastly different than the one at issue in this case in two key aspects. First, unlike the agreement at issue here, the choice of law provision in *Harris* did not expressly apply federal law. *Id*. at 739. Second, the arbitration agreement at issue in *Harris* contained a provision that is not present here: it granted the tribal court exclusive authority to review an arbitration award. *Id.* at 740. The *Harris* Court found that this provision permitted the tribal court to, "for any reason determine the FAA does not apply" and "effectively allows tribal courts to apply tribal law to an arbitration award in every instance," and therefore the "animating purpose of the arbitration agreement is to incorporate tribal law to the exclusion of federal and state law, representing an integrated scheme to contravene public policy." *Id*. (cleaned up). By contrast, the agreement at issue here 1) provides for arbitration before AAA or JAMS, Christensen Decl., Ex. A at PageID # 357 ¶ 10(e); 2) expressly applies federal law, *Id.* at PageID # 358-59 ¶ 12 ("This agreement . . .

shall be governed by the applicable federal law and the tribal and substantive law of the Flandreau Santee Sioux Tribe . . ..”); and 3) exclusively provides for federal court review of the arbitrator's decision as set forth in the FAA. *Id*. at PageID # 359 ¶ 10(g). (“The provisions of the Federal Arbitration Act, 9 U.S.C. Sections 9-11, shall apply to any application to confirm, vacate, modify, or correct any arbitration award.”). Accordingly, *Harris* simply does not apply here.

Moreover, relying on *Rent-A-Center*, the Eleventh Circuit recently rejected the same arguments made by Plaintiff here (that choice of law provisions applying tribal law and “applicable federal law” rendered both the arbitration and the delegation clauses unenforceable), and enforced a similar delegation clause[1] contained in an arbitration agreement with a tribally-owned lender. *Dunn v. Global Tr. Mgt*, 2024 WL 4379966, at *8 (11th Cir. 2024). In *Dunn*, the Court held that, “a valid and enforceable choice-of-law provision is not a prerequisite to determining the enforceability of a delegation provision or the gateway” issue of arbitrability. *Id.* at *12 (cleaned up). Instead, “issues pertaining to ‘what law the arbitrators will apply to petitioner's claims’ are ‘premature’ at the arbitration-enforcement stage because ‘the choice-of-law question ... must be decided in the first instance by the arbitrator.’” *Id*. (*quoting Vimar Seguros v. Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995)).

Because Plaintiff does not raise any challenge “directed specifically” to the delegation clause, but instead challenges the agreement as a whole, Plaintiff's challenge must be decided by the arbitrator in the first instance.

**2. The Prospective Waiver Doctrine Does Not Apply**

---

[1] In *Dunn*, the delegation provision provided that, “any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement” is a dispute subject to arbitration. *Dunn*, 2024 WL 43759966 at *8.

Even if the Court determines that the issue of arbitrability should be decided by the Court notwithstanding the delegation clause, Plaintiff's claim that the Agreement is unenforceable based on the prospective waiver doctrine (aka the "effective vindication" doctrine) must be rejected, as the doctrine does not apply here.

#### i. The Agreement Does Not Waive Plaintiff's Federal Statutory Rights

As noted above, Plaintiff's claim that the Arbitration Agreement at issue waives his federal statutory rights is contradicted by the plain language of the Agreement. Section 10(i) of the Arbitration Agreement provides, "This arbitration clause is made pursuant to a transaction involving Indian commerce and ***shall by governed by applicable federal laws***, including the Federal Arbitration Act . . .." Christensen Decl., A PageID # 358 ¶ 10(i) (emphasis added). Moreover, the Governing Law section of the Loan Agreement provides, in relevant part:

> This agreement is made and accepted in the sovereign territory of the Lender in the Flandreau Santee Sioux Tribe and ***shall be governed by the applicable federal law*** and the tribal and substantive law of the Flandreau Santee Sioux Tribe, including but not limited to the Tribe's Lending and Consumer Protection Act, and the Federal Arbitration Act, without regard to choice of law principles.

*Id*. at ¶ 12 (emphasis added). In addition, Section 28-3-2 of the Tribe's Lending and Consumer Protection Act expressly applies federal law, providing:

> Lenders shall at all times comply with the provisions of this title, rules and regulations promulgated pursuant to this title, ***and all other applicable Tribal and federal laws including, without limitation, the Federal Consumer Protection Laws***.

Reider Decl., Ex. D at PageID # 342 (emphasis added).[2] [3]

---

[2] Plaintiff's assertion that the Tribe's Lending and Consumer Protection Act "omits RICO," Pltf's Opp'n, ECF 42 at 13, is untrue, as the Act applies "federal laws, *without limitation*, the Federal Consumer Protection Laws." Reider Decl., Ex. D at PageID # 342 § 28-3-2.

[3] That the Loan Agreement is governed by federal law is further evidenced by the fact that it contains Truth in Lending Disclosures that are compliant with the federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and prominently display the APR, Finance Charge, Amount Financed, Total Payments, and Payment Schedule. Christensen Decl., Ex. A at PageID # 353-54.

In *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 836-37 (S.D. Ind. 2024) the Court held that nearly identical governing law provisions in a tribal lending agreement does not waive a plaintiff's federal rights. There, the governing law provision applied, "the laws of the Tribe and applicable U.S. federal law." *Id*. at 834. The Court concluded, "the plain language reveals neither waiver nor disavowal of federal law and, accordingly, cannot fairly be construed as prospectively waiving a potential claimant's statutory rights and remedies." *Id*. at 835.

Plaintiff's claim that the Arbitration Agreement waives federal law is contradicted by the Agreement itself, and accordingly the prospective waiver doctrine does not apply on that basis.

**ii. The Prospective Waiver Doctrine Does Not Apply to State Rights**

Plaintiff also claims that the prospective waiver doctrine applies because the Arbitration Agreement waives her rights under Illinois state law. Pltf's Opp'n, ECF No. 43 at 13-16. However, none of the Supreme Court decisions that Plaintiff relies on hold that the prospective waiver doctrine applies to a waiver of state rights. *American Express v. Italian Colors Rest.*, 570 U.S. 228 (2013), did not involve a question of waiver of state statutory rights; instead, the Court enforced an arbitration agreement that plaintiff had alleged waived her federal rights, claiming that the cost of individual arbitration would exceed any judgment plaintiff would obtain, thereby contravening policies underlying federal antitrust laws. *Id*. at 234-39. In a dissent, Justice Kagan (joined by Justices Breyer and Ginsburg) disagreed with the majority's narrow interpretation of the prospective waiver rule, and disagreed with the majority's reliance on *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) as authority for its decision, because *AT&T Mobility* did not address the effective vindication rule, but instead relied on federal preemption. *Id*. 570 U.S. at 251-52 (Kagan, J., dissenting). In so doing, Justice Kagan noted that *AT&T Mobility* could not have possibly implicated the effective vindication rule because it involved a state law:

> *AT&T Mobility* involved a state law, and therefore could not possibly implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so—as the Court found in *AT&T Mobility*—the Supremacy Clause requires its invalidation. We have no earthly interest (quite the contrary) in vindicating that law. Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another federal law, like the Sherman Act here. In that all-federal context, one law does not automatically bow to the other, and the effective-vindication rule serves as a way to reconcile any tension between them.

*Id*. at 252.

Plaintiff also relies on *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2000), but *14 Penn Plaza* did not apply the prospective waiver doctrine to state statutory rights, but instead found an arbitration agreement that required arbitration of employees' federal ADEA claims was enforceable.

Plaintiff also claims that *Viking River Cruises v. Moriana*, 596 U.S. 639 (2022), "confirmed that the [prospective waiver] doctrine applies to prospective waivers of state substantive rights as well." Pltf's Opp'n, ECF No. 42 at 13. Plaintiff is wrong. *Viking River* was decided on the basis of federal preemption of a state statute by the FAA, not the prospective waiver doctrine. Nowhere in *Viking Riber* does the Court even mention the prospective waiver/effective vindication doctrine, and the passage in footnote 5 relied on by Plaintiff has nothing to do with the prospective waiver doctrine. In footnote 5, the Court addressed an argument made in parties' briefs that, "the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes." *Viking River*, 596 U.S. at 653, n.5. The Court called this argument "erroneous," because "The basis of this principle is not anything unique about federal statutes. It is that the FAA requires only the enforcement of "provision[s]" to settle a controversy "by arbitration," § 2, and not any provision that happens to appear in a contract that features an arbitration clause." In other words, the Court stated that the FAA does not "mandate the enforcement" of *any* contractual

provision other than the provisions to settle a controversy by arbitration. As explained by the Court in *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 836-37 (S.D. Ind. 2024):

> Mr. Walton attempts to invoke *Viking River Cruises, Inc. v. Mor*iana for the proposition that the Supreme Court has condoned the application of the prospective waiver rule to claims arising under state law. 596 U.S. 639, 653 n.5 (2022). In that decision, the Court characterized as "erroneous" the petitioner's argument "that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes." *Id*. Stripped of its context, this footnote would surely lend itself to Mr. Walton's portrayal. However, nowhere in the *Viking River* decision did the Court mention the prospective waiver doctrine (or its alternative namesake, the effective vindication exception). To the contrary, the Court simply reiterated that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in the arbitral forum." *Id*. at 653 (cleaned up). In other words, substantive statutory rights—whether they be federal or state—are not nullified simply by virtue of their resolution in an arbitral, rather than a judicial, forum.

*Id.* (cleaned up); *Accord*, *Bridges v. Raines*, 2025 WL 3565343 (WDNC 2025), at *4 *(*"Thus, at most, the passage in *Viking River* . . . stands for the proposition that substantive statutory rights, whether state or federal, are not forfeited simply by the fact that they are resolved in an arbitral, as opposed to a judicial, forum. In other words, the Supreme Court recognized that the inclusion of a clause requiring arbitration under the FAA is not some magical incantation that voids a choice of law provision."); *But see, Harris v. W6LS, Inc.,* No. 23 CV 16429, 2024 WL 2319716, at *5 (N.D. Ill. May 22, 2024) (finding *Viking River* "makes a distinct point that the prospective waiver principle applies to state as well as federal substantive rights."), *appeal pending*, Case No. No. 24-2056 (7th Cir.) (argued Feb. 12, 2025).

*Viking River* certainly did not address a claim that a choice of law provision allegedly waives a party's rights under the law of a jurisdiction *not* chosen by the parties to an arbitration agreement, as here. Indeed, Plaintiff's far-reaching interpretation of footnote 5 cannot be reconciled with the Supreme Court's holding in *DIRECTV v. Imburgia*, 577 U.S. 47, 53-54 (2015) that the FAA, "allows parties to an arbitration contract considerable latitude to choose what law

governs some or all of its provisions, including the law governing enforceability of a class action waiver. In principle, they might choose to have portions of their contract governed by the law of Tibet, the law of prerevolutionary Russia, or (as is relevant here) the law of California ....” *Accord*, *Bridges*, 2025 WL 3565343, at *5 (“Limiting application of the prospective waiver doctrine to federal statutory rights is consistent with the principle that “parties to an arbitration contract [have] considerable latitude to choose what law governs some or all of its provisions.”) (citing *DIRECTV*, 577 U.S at 53-54) (2015)).

The overwhelming majority of Circuit Court decisions relied on by Plaintiff also hold that the prospective waiver doctrine applies only to waivers of federal statutory rights. In the only Seventh Circuit case cited by Plaintiff on this topic, *Smith v. Bd of Directors of Triad Mfg., Inc*., 13 F.4th 613 (7th Cir. 2021), the Court held an arbitration agreement unenforceable as prospective waiver of plaintiff's *federal* rights under ERISA. The Court did not (and had no reason to) address a prospective waiver of state rights. In addition, nearly all of the other Circuit Court decisions relied on by Plaintiff 1) involved agreements that applied tribal law to the exclusion of federal law, and 2) held the agreements at issue unenforceable based solely on a waiver of *federal* statutory rights. *Hayes v. Delbert Servs. Corp*., 811 F.3d 666, 669-670 (4th Cir. 2016) (agreement at issue provided that it, “is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe,” and that “no United States state or federal law applies to this Agreement;” Court held that the arbitration agreement, “functions as a prospective waiver of *federal* statutory rights and, therefore, is unenforceable as a matter of law.”) (emphasis added); *Hengle v. Treppa*, 19 F.4th 324, 332 (4th Cir. 2021) (arbitration agreement provided, “shall in no way . . . allow for the application of any law other than the laws of the Habematolel Pomo of Upper Lake;” Court held the arbitration provision, “invalid as a prospective waiver of Plaintiffs' rights to pursue *federal*

*statutory remedies*.") (emphasis added); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 332-33 (4th Cir. 2017) (agreement provided that it was, "subject solely to the exclusive laws and jurisdiction of the Otoe-Missouria Tribe of Indians" and that "no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation;" Court held, "the arbitration agreement functions as a prospective waiver of *federal statutory rights* and, therefore, is unenforceable as a matter of law.") (emphasis added); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (4th Cir. 2020) (agreement provided that it did not, "allow for the application of any law other than Tribal Law; Court held because the "effect of such provisions is to thereby make unavailable to the borrowers the effective vindication of *federal statutory protections and remedies*, the arbitration agreements at issue amount to a prospective waiver," and "c]onsequently, the "entire arbitration agreement is unenforceable.") (emphasis added); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) (agreements provided that they, "shall be governed by tribal law;" Court held because choice-of-law provisions in agreements "prevent the borrowers from effectively vindicating any *federal statutory claims*, they violate the prospective waiver rule, and, [a]s a result, the delegation provisions—and thus the arbitration agreements—are unenforceable.") (emphasis added); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 235-37 (3rd Cir. 2020) (agreement provided that it, "shall not be construed in any way . . . to allow for the application of any law other than Tribal law;" Court held, "Because the arbitration agreement mandates that only tribal law applies in arbitration, *federal law* does not. As a result, the arbitration agreement effects as an impermissible prospective waiver of statutory rights.") (emphasis added).[4]

[4] Plaintiff also cites *McDonald v. Cash Call, Inc.*, 883 F.3d 220 (3d Cir. 2018), but the Court in that case did not even address the prospective waiver doctrine, but instead found the arbitration agreement unenforceable because, "the arbitral forum provided for in the Loan Agreement is nonexistent," *Id.* at 227, a flaw that does not exist in the agreement at issue in this case, in which the parties agreed to arbitration before either the AAA or JAMS.

By contrast, both the Arbitration Agreement and Governing Law provisions contained in the Loan Agreement here expressly apply federal law; therefore, these Circuit Court decisions do not support Plaintiff's prospective waiver claim.[5] Indeed, as the Court recognized in *Walton,* "None of these [tribal lending] decisions [from the Second Third and Fourth Circuits] stands for the proposition that disclaiming state law necessarily renders an arbitration agreement unenforceable." *Walton*, 722 F. Supp. 3d at 836.

In addition, Plaintiff does not mention that the Ninth Circuit has expressly held – post *Viking River* - that the prospective waiver doctrine does *not* apply to state statutory rights. *Rivas v. Coverall North America, Inc.*, 2024 WL 1342738 at * (9th Cir. Mar. 29, 2024) (prospective waiver doctrine, "does not extend to state statutes") *citing Ferguson v. Corinthian Colleges, Inc*., 733 F.3d 928, 936 (9th Cir. 2013); *see also*, *Stutler v. T.K. Constructors, Inc*., 448 F.3d 343, 346 (6th Cir. 2006) (limiting application of prospective waiver rule to claims involving federal statutory claims).

While Plaintiff relies on five district court decisions for the proposition that the prospective waiver doctrine applies to state statutory rights,[6] unlike here, the agreements at issue in three of those cases contained provisions that did not expressly apply federal law, and in two of those cases the agreements contained provisions that could permit tribal law to effectively nullify federal rights. *See*, *Harris*, 686 F. Supp. 3d at 739 (agreement did not expressly apply federal law, and

---

[5] *But see, Gingras v. Think Finance, Inc*., 922 F.3d 112, 118 (2d Cir. 2019) (agreement provided that it was, "subject solely to the exclusive laws and jurisdiction of the [Tribe]" and that, "no other state or federal law or regulation shall apply." Court held agreement "unenforceable because they are designed to avoid federal and state consumer protection laws."). However, after *Gingras*, the Second Circuit held that the Effective Vindication Doctrine did not apply in a case asserting only state law, and stated that, even if the doctrine "were to apply in the context of state statutory rights," the defendants were not foreclosed from vindicating them, rather they required to pursue them in arbitration. *Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019).

[6] *See* Pltf's Opp'n, ECF No. 42 at 8-16 (discussing *Fahy v Minto Dev. Corp*., 722 F. Supp. 3d 784 (N.D. Ill. 2024); *Harris v. W6LS, Inc*., No. 23 CV 16429, 2024 WL 2319716 (N.D. Ill. May 22, 2024); *Harris v. FSST Mgt. Servs. LLC*, 686 F. Supp. 3d 734 (N.D. Ill 2023); *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756 (W.D. Va 2023); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778 (E.D. Pa. 2016).

only permitted enforcement of arbitration awards to be enforced in tribal court, which the court held allowed the application of tribal law to an arbitration award in every instance to the exclusion of federal and state law); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778 (E.D. Pa. 2016) (arbitration agreement required arbitrator to apply tribal law only). In *Fahy v Minto Dev. Corp.*, 722 F. Supp. 3d 784 (N.D. Ill. 2024), three of the four loan agreements at issue contained governing law provisions that provided, "The laws of the Tribe will govern this Agreement, without regard to the laws of any state or other jurisdiction . . . [and] in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute." *Id*. at 790. Further, all of the arbitration agreements at issue in *Fahy* provided that the rules and procedures of the AAA apply to the arbitration only "to the extent those rules and procedures do not contradict the express terms" of the loan agreement or tribal law. *Id.* By contrast, the Loan and Arbitration Agreement at issue here suffers from neither of these defects.

Plaintiff also fails to note that the vast majority of federal district courts that have addressed the issue have determined that the prospective waiver doctrine does *not* apply to state statutory rights. *See Bridges,* 2025 WL 3565343 at *5 (declining to apply prospective waiver rule to state law claims in the tribal lending context, holding "the prospective waiver [doctrine] becomes relevant only where compelling arbitration, as the FAA instructs, simultaneously jeopardizes federally protected interests," quoting *Walton*, 722 F. Supp. 3d at 836 ( "Extending the prospective waiver rule to state law claims is, in our view, incompatible with the rule's purpose."); *Ham v. CarMax Auto Superstores, Inc*., No. 2024 WL 2093655, at *6 (D.N.M. May 9, 2024) (holding that the effective vindication doctrine, "does not extend to state statutes") (cleaned up) (citation omitted); *Johnson v. Opportunity Fin., LLC*, No. 3:22CV190, 2023 WL 2636712, at *6 (E.D. Va. Mar. 24, 2023) ("the prospective waiver doctrine only applies to the waiver of federal, not state,

statutory rights"); *Keller v. About, Inc.*, No. 21-CV-228, 2021 WL 1783522, at *4 (S.D.N.Y. May 5, 2021) ("the effective vindication doctrine does not extend to state statutes" (cleaned up)(citation omitted); *Butler v. ATS Inc.*, 2021 WL 1382378, at *8 (D. Minn. Apr. 13, 2021) (doctrine only applies, "in an all-federal context, when the FAA is alleged to conflict with another federal law.") (cleaned up)(citation omitted); *Billie v. Coverall N. Am., Inc.*, 444 F. Supp. 3d 332, 350 (D. Conn. 2020) ("Because state law simply cannot demonstrate a federal congressional command, plaintiffs' [state law] claims cannot rely on [the] effective vindication doctrine.") (cleaned up) (citations omitted); *Keyes v. Ayco Co., L.P.*, No. 117CV00955, 2018 WL 6674292, at *6 (N.D.N.Y. Dec. 19, 2018) ("'the vindication of rights doctrine is inapplicable to state statutory remedies'") (quoting *Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-cv-2293, 2014 WL 10518555, at *10 (E.D.N.Y. Aug. 12, 2014) adopted by, 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015) (same); *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 155 (D.D.C. 2017) (declining to apply effective vindication analysis to claims arising under District of Columbia law); *Torres v. CleanNet, U.S.A., Inc.*, 90 F. Supp. 3d 369, 378 (E.D. Pa. 2015) (prospective waiver doctrine "simply should not and does not apply to state statutes.").

In sum, the overwhelming majority of federal district and appellate courts have determined that the prospective waiver doctrine applies to waivers of federal, not state rights. Because the Arbitration Agreement at issue here applies all federal laws, it does not waive any of Plaintiff's federal rights. Accordingly, Plaintiff's claims must be arbitrated.

#### iii. Plaintiff's Claim that the Governing Law Provision in the Loan Agreement Waives Her Federal Rights Under RICO Must Be Decided by the Arbitrator

Plaintiff's claim that the Arbitration Agreement is unenforceable because the choice of law provision, "limit[s] Plaintiff's ability to bring RICO claims for collection of an unlawful debt . . . because the Loan Agreement does not allow state [usury] law to be applied" has been rejected by

other federal courts. *See, e.g., Bridges v. Raines*, No. 1:24-cv-00087, WL 3565343 at *5 (W.D. NC 2025); *Williams v. Opportunity Fin., LLC*, No. 24-CV-09730, 2025 WL 2300296 (N.D. Ill. July 17, 2025); *Walton*, 722 F. Supp. 3d at 736-37; *Johnson v. Opportunity Fin., LLC,* No. 3:22-CV-190, 2023 WL 2636712, at *6 (E.D. Va. Mar. 24, 2023). In *Williams* and *Johnson*, the plaintiff opposed compelling arbitration, claiming that the arbitration agreement's choice-of-law provision selecting "federal law and the laws of the State of Utah" constituted an impermissible waiver of the plaintiffs' federal RICO claims premised on an alleged unlawful debt because Utah law, unlike the state law of the plaintiffs' residence, imposed no usury limits. *Williams*, 2025 WL 2300296 at * 2-3: *Johnson*, 2023 WL 2636712, at *2, 5. Similarly, plaintiffs in *Bridges* and *Walton* argued that that the arbitration agreement's choice-of-law provision selecting federal law and tribal law constituted an impermissible prospective waiver of the plaintiffs' federal RICO claims premised on an alleged unlawful debt because, unlike the state law of the plaintiff's residence, tribal law imposed no usury limits (i.e., the same argument made by Plaintiff here, Pltf's Opp'n, ECF No. 42 at 13). Consistent with the Supreme Court's ruling in *Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995), the courts held that the merits of a choice-of-law analysis must be decided in the first instance by the arbitrator. *Walton*, 722 F. Supp. 3d at 837-38 ("our ruling today reserves the pertinent choice-of-law inquiry for the arbitrator, as well as Mr. Walton's unconscionability arguments.") *Williams*, 2025 WL 2300296 at * 3-5 ("the merits of a choice-of-law analysis must be decided in the first instance by the arbitrator, and at that time, the arbitrator will resolve whether Utah law governs plaintiff's claims")(cleaned up); *Johnson*, 2023 WL 2636712, at * 5 ("challenges to contract-wide choice-of-law provisions should be heard by arbitrators, not courts."); *See Bridges*, 2025 WL 3565343 at *5 ("the arbitration provisions

explicitly provide for the application of both tribal and federal law. As such, it is undisputed that the Plaintiffs can pursue their RICO claims at arbitration.").

In compelling arbitration, the courts rejected the same argument made by Plaintiff here, that referring the merits of a choice of law clause to the arbitrator would be dispositive of Plaintiff's RICO claim. *See* Pltf's Opp'n, ECF No. 42 at 18. In doing so, the courts held that a plaintiff's chance of success plays no role in the determination of whether the claims must be arbitrated. *Bridges*, 2025 WL 3565343 at *5 ("[A] plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had. It is enough that the plaintiff is not barred from bringing her claim, even if it is bound for defeat.") (*quoting Johnson*, 2023 WL 2636712, at * 5). *See, Williams,* 2025 WL 2300296 at *5 ("It is not evident at this time whether the arbitrator will apply Utah law when adjudicating the issues in this case, but the court will not infringe on the arbitrator's role as outlined by the FAA."); *Walton*, 722 F. Supp. 3d at 837 ("[W]e heed the Supreme Court's admonition against 'invalidat[ing] arbitration agreements on the basis of speculation.'") (quoting *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2000)).

The courts further concluded that, while it would be premature for the court to decide the merits of plaintiff's choice of law challenge at the arbitration enforcement stage, the issue would be ripe for judicial review at the arbitration award enforcement stage. *Williams*, 2025 WL 2300296 at *5, n.4 ("[T]he district court will have 'the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the ... laws has been addressed.'" (quoting *Vimar*, 515 U.S. at 540 (alteration in original)); *Johnson*, 2023 WL 2636712, at * 5 ("[T]he prospective waiver issue would not become ripe for final determination until the federal court is asked to enforce the arbitrator's decision." (cleaned up) (quoting *Dillon v. BMO Harris Bank*, N.A., 856 F.3d 330, 334 (4th Cir. 2017)); *See Bridges*, 2025 WL 3565343 at *6 (staying court proceedings

pending the completion of arbitration); *Walton*, 722 F. Supp. 3d at 837 ("Any further judicial involvement must await the outcome of the arbitration.").

The courts' reasoning in the above-discussed cases apply equally here. Both the Loan Agreement and the Arbitration Agreement here expressly apply federal law, including RICO, and Plaintiff's chance of ultimately succeeding on her RICO claims plays no role in whether such claims must be arbitrated. Instead, Plaintiff's challenge to the choice of law provision must be decided in the first instance by the arbitrator, and is only ripe for judicial determination in a petition to confirm, modify or vacate the arbitration award pursuant to the FAA, as is expressly provided in the Arbitration Agreement at issue here. Christensen Decl., ECF No. 35-2, Ex. A at PageID # 358 ¶ 10(g) ("The provisions of the Federal Arbitration Act, 9 U.S.C. Sections 9-11, shall apply to any application to confirm, vacate, modify, or correct any arbitration award."). Accordingly, Plaintiff's claim that the Arbitration Agreement waives her rights under RICO must be arbitrated.

**B. The Doctrine of Ex Parte Young Does Not Apply to Alleged Violations of State Law, Nor Can It Be Supported by a Claim for Injunctive Relief under RICO**

**1. The Doctrine of Ex Parte Young Does not Apply to State Law Claims**

Plaintiff raises the *Ex parte Young* doctrine is an attempt to pierce the sovereign immunity of the Tribal Defendants and Denier. Pltf's Opp'n, ECF No. 42 at 2, 17, 18, 20. But Plaintiff incorrectly asserts that the *Ex parte Young* doctrine defeats the Tribal Defendants' sovereign immunity on the basis of alleged state law violations. As the Supreme Court held in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) the *Ex parte Young* doctrine does not apply to alleged violations of state law, stating. "[W]hen a plaintiff alleges that a state official has violated state law . . . the entire basis for the doctrine of *Young* and *Edelman* disappears." *Accord*, *MCI Telecommunications Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000) ("The *Ex parte Young* doctrine may not be used to enjoin violations of state law.") (citing *Pennhurst II,* 465 U.S. at 106); *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 887–88 (N.D. Ill. 2020) (same); *Asian Americans Advancing Just.-Chicago v. White*, No. 1:20-CV-01478, 2021 WL

12318991, at *3 (N.D. Ill. Mar. 25, 2021) ("Plaintiffs' state law claims . . . do not fall within the *Ex parte Young* exception because those claims are for allegedly ongoing violations of state law, not federal law."). Moreover, the *Ex Parte Young* doctrine does not apply to claims against tribal officials for alleged violations of state law. *California v. Del Rosa*, No. 2:23-CV-00743-KJM-SCR, 2024 WL 4819459, at *1 (E.D. Cal. Nov. 18, 2024). Plaintiff's reliance on *Michigan v. Bay Mills Indian Cmty*, 572 U.S. 782, 796 (2014) is misplaced, as *Bay Mills* did not hold that tribal officials may be sued for prospective injunctive relief for violations of state law under the doctrine of *Ex Parte Young*. As explained by the court in *Del Rosa:*

> The Supreme Court [in *Bay Mills*] cited *Ex parte Young* in its explanation for why it rejected Michigan's arguments, *but it did not hold that Michigan could proceed under Ex parte Young*. . . . In short, the Supreme Court did not apply *Ex parte Young* in *Bay Mills*, and it did not actually consider whether any particular alternative claim would be permissible under the *Ex parte Young* doctrine or an analogous rule. Nor did the Court define or recognize any new analogous doctrine. It cited *Ex parte Young* only indirectly to explain why Michigan had overstated the negative effects of a ruling for the opposing tribe.

*Del Rosa*, 2024 WL 4819459, at *2 (cleaned up) (emphasis added).

In sum, the Supreme Court and the Seventh Circuit have squarely rejected the argument that the *Ex parte Young* doctrine applies to alleged violations of state law, and *Bay Mills* did not hold that the doctrine applies to alleged violations of state law. Accordingly, should the Court deny the pending Motion to Compel Arbitration, Plaintiff's state law claims against the Tribal Defendants and Dernier must be dismissed.

### 2. RICO Does Not Provide a Private Right of Action for Injunctive Relief

Plaintiff relies on the Seventh Circuit's reversed decision in *National Organization for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003) for the proposition that RICO authorizes a private right of action for injunctive relief. However, the Supreme Court has held that RICO "bring[s] to bear the pressure of 'private attorneys general' on a serious national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective . . . is the carrot of treble damages," not injunctive relief. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc*., 483 U.S. 143, 151 (1987). The Supreme Court reinforced this conclusion with the fact that Congress considered - but failed - to extend injunctive relief to private plaintiffs in proposed amendments to RICO. *Id*. at, 155. The Court's decision in *Agency Holding Corp*. cannot be reconciled with *Scheidler,*

and accordingly, RICO does not provide a private right of action for injunctive relief. However, as set forth in the Tribal Defendants' opening brief, should this Court determine that it is bound by *Scheidler* despite the fact that it was overruled on other grounds, and despite the Supreme Court's decision in *Agency Holding Corp*, Tribal Defendants wish to preserve this issue for appeal.

### C. Dernier is Protected by Tribal Immunity as an Officer of FMS

Plaintiff does not contest that FMS is an arm of the Tribe that is entitled to tribal sovereign immunity. Instead, Plaintiff asserts arguments about why Dernier is not protected by FMS's immunity. Plaintiff's claims fail, for several reasons.

First, Plaintiff describes Dernier as an "employee" of FMS. Dernier is not just an employee, but Dernier (at all relevant times) was the CEO of FMS, as Plaintiff admits in her Complaint. Compl., ECF No. 1 ¶ 16. Mr. Dernier's duties as CEO were commensurate of those with an officer of any governmental entity. *See* Reider Decl., ECF 35-1 ¶ 12. Moreover, a tribal employee need not be a high-level officer performing governmental functions or exercising discretion in order to be protected by the Tribe's immunity. *Bassett v. Mashantucket Pequot Museum & Rsch. Ctr. Inc.*, 221 F. Supp. 2d 271, 277 (D. Conn. 2002).

Second, Plaintiff claims that because Dernier, "is not a member of the Tribe," he is not entitled to immunity. Pltf's Opp'n ECF No. 42 at 26. Plaintiff is wrong. In *Breakthrough Mgt. Group, Inc. v Chuckchansi Gold Casino Illinois and Resort*, 629 F. 3d 1173 (10th Cir. 2010), plaintiff sued a tribally-owned casino (which the Court determined was an arm of the tribe protected by the Tribe's immunity), and the manager of the casino, who was not a tribal member. The Court concluded that the manager was protected by the immunity of the tribal casino. *Id*. 629 F. 3d at 1195 -96; *Accord*, *Baugus v. Brunson*, 890 F. Supp. 908, 911 (E.D. Cal. 1995) ("It is not required, at least in this circuit, that one be a member of a tribe in order to be a "tribal official" for the purpose of sharing in the tribe's sovereign immunity." (citing *Davis v. Littell*, 398 F.2d 83, 85 (9th Cir.1968)).

Third, while Plaintiff correctly states that a tribe is the real party in interest where a suit against a tribal officer, "attempts to reach the tribal treasury" or the suit "interfere[s] with tribal self-

governance,"Pltf's Opp'n, ECF No. 42 at 21-22, that is precisely what Plaintiff's seeks through its claims against Dernier. While Plaintiff purports to seek damages against Dernier as an individual, the effect of such judgment would be to impair the Tribe's ability to recruit and retain officers to operate or manage its lending business, as no individual would take on the massive liability that Plaintiff seeks to impose on Dernier. That would destroy the Tribe's ability to maintain a functioning lending business, thereby destroying the Tribe's ability to obtain revenues from the business – revenues that are essential to critical tribal government programs and services for its members. Reider Decl., ECF No. 35-1 at ¶ 15 ("Absent funding that the Tribe receives from [FMS], many of these programs or services would not exist or would be severely underfunded. The loss of revenue from [FMS] would have a substantial and direct negative effect on the economic and socioeconomic welfare of the Tribe and its members."); *See Breakthrough*, (tribal entity entitled to immunity because judgment against tribal entity would "reduce the Tribes' income" that it uses "to fund its governmental functions, its support of its tribal members, and its search for other economic development opportunities."). Accordingly, Plaintiff's claims against Dernier are protected by the Tribe's sovereign immunity.

### D. Plaintiff Fails to State a RICO Claim Against Tribal Defendants and Dernier

#### 1. The Terms of Plaintiff's Loan Agreement Invalidate the Lynchpin of Plaintiff's RICO Claims that Plaintiff's Loan is an "Unlawful Debt"

The Complaint alleges in relevant part as to Mr. Dernier, that he "…violated Section 1962(c) of RICO by participating, directly or indirectly, in the conduct of the Enterprise's affairs in the collection of *unlawful debt*," Compl., ECF No. 1 ¶ 109, and that he "violated 18 U.S.C. Section 1962(d) by conspiring to use the Enterprise to collect *unlawful debt*." Compl. ¶ 121 (emphasis added). The allegations of RICO violations under the same two statutes against the Tribal Defendants are similarly predicated on Plaintiff's loan being an "*unlawful debt*." Compl. ¶ 173, ¶ 178).

However, the allegations as to the alleged "*unlawful debt*" are contradicted by the Governing Law provisions of Plaintiff's Loan Agreement which, as noted above, apply tribal law and federal law, not Illinois usury laws. Plaintiff argues that "the inclusion of choice of law provisions in tribal lending … agreements that choose tribal law to the exclusion of federal and state law are unenforceable under the prospective waiver doctrine," and claims Plaintiff's position is "confirmed by courts in this District and across the country." Pltf's Opp'n, ECF No. 42 at 2. However, as discussed above, the Loan Agreement at issue here does not waive Plaintiff's federal rights, and the prospective waiver doctrine does not apply to state rights. See *supra*., at Sec. III(A).

Moreover, the content of the loan agreement to which the Plaintiff agreed contradicts the Plaintiff's allegations of "unlawful debt," and the Plaintiff's allegations therefore must be disregarded. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998), citing *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co*., 927 F.2d 988, 991 (7th Cir. 1991) ("It is a well-settled rule that when a written instrument contradicts allegations in the Complaint to which it is attached, the exhibit trumps the allegations.")

Dismissal of the RICO claims therefore is proper. *Cf. Whirlpool Financial Corp. v. GN Holdings, Inc.,* 873 F. Supp. 111, 123 n. 18 (N.D. Ill. 1995) (dismissing action), *aff'd,* 67 F.3d 605 (7th Cir. 1995). In footnote 18, that Court stated: "This Court need not 'ignore any facts alleged in the Complaint that undermine the plaintiff's claim; *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir. 1993), and where, as here, an exhibit contradicts the assertions made in the Complaint itself and reveals facts that foreclose recovery as a matter of law, the exhibit controls. *Hamilton v. O'Leary,* 976 F.2d 341, 345 (7th Cir. 1992); 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 2d* § 1327, at 766-67 (2d ed. 1990).

**2. The RICO Claims Should be Dismissed because Plaintiff Fails to Plead that Mr. Dernier or the Tribal Defendants Directed the Alleged RICO Enterprise**

Notwithstanding Plaintiff's Response, the RICO claims against Mr. Dernier and those against the Tribal Defendants should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff fails to allege that either Mr. Dernier or the Tribal Defendants had some part in *directing* the affairs of the alleged RICO "Enterprise" as that "Enterprise" is defined in the Complaint, which is required. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (…one must have some part in directing those affairs…").

The Complaint alleges that "605 Lending" is the trade name of FSST Management Services, LLC ("FSST Management Services, LLC dba 605 Lending"). Compl., ECF No. 1 at ¶ 53. The alleged RICO "Enterprise" that is the subject of the First Cause of Action against Dernier is defined in Complaint at ¶ 101, but does not include or define the "Enterprise" as FMS or 605 Lending. Likewise, the alleged RICO "Enterprise" that is the subject of the Tenth Cause of Action against the Tribal Defendants is defined in Complaint at ¶ 171, but does not include or define the "Enterprise" as FMS or 605 Lending. However, Plaintiff alleged that Mr. "Dernier…is the individual *who actually runs* FMS and 605 Lending," Compl., ECF No. 1 ¶ 52 (emphasis added), and that "the Flandreau Sioux Tribe ('the Tribe' or 'FSST') has entered into agreements…including [with] 605 Lending." *Id.* at ¶ 6. Plaintiff also alleges that "Dernier is *directly involved* in the operations of the 605 Lending *enterprise*…." *Id.* at ¶ 16 (emphasis added), but these allegations fail to allege Dernier's running of or involvement with the RICO "Enterprise" as defined in the Complaint, ¶¶ 101 and 171.

Plaintiff's arguments Opposition to the Motion to Compel about Dernier's alleged involvement with "the enterprise which currently goes by the name of 605 Lending" ECF No. 42 at 4, 30, are to no avail, because they do not state a claim that Dernier directed the "Enterprise" that is defined in the Complaint. Indeed, the Complaint refers to "the enterprise which currently

goes by the name of 605 Lending" to be FSST Management Services, LLC, Compl. ¶ 53 ("FSST Management Services, LLC dba 605 Lending"), which not the RICO "Enterprise" as defined in the Complaint, ¶¶ 101 and 171.

As to the Tribal Defendants, the Tenth Cause of Action against them should be dismissed for the same reasons as the claims against Dernier. It is evident from the Response that it touts the alleged role of the Tribal Defendants in the "605 Lending enterprise" ("The Executive Committee's members do, therefore, take part in directing the operation or management of the 605 Lending enterprise.") Pltf's Opp'n, ECF No. 42 at 28) – not in the "Enterprise" as defined in ¶ 171 of the Complaint.

Finally, Plaintiff's Opposition fails to address the admission in the Complaint that is fatal to the RICO claim against the Tribal Defendants: "The Tribe has no say in critical decisions in this illegal lending enterprise, including to whom the enterprise lends, at what interest rate, and with what repayment terms. All of these decisions are made by non-tribal actors." Compl., ECF No. 1 ¶ 71. The Tenth Cause of Action against the Tribal Defendants should be dismissed for this reason as well.

**3. Plaintiff's RICO Claims against Mr. Dernier and the Tribal Defendants should be Dismissed for Failure to State a Claim under Rule 12(b)(6).**

Plaintiff does not contest the legal argument that if Plaintiff does not adequately allege a violation of § 1962(c), Plaintiff's RICO conspiracy claims against Mr. Dernier and the Tribal Defendants under § 1962(d) must fail. *d & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) ("Having failed to plead facts that would establish a violation of Section 1962(c), [plaintiff] cannot state a claim for conspiracy under Section 1962(d) based on those same facts"). Because Plaintiff's Complaint fails to state a claim

against Mr. Dernier or the Tribal Defendants for a violation of Section 1962(c), it also fails to state a claim under Section 1962(d), and must be dismissed pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, and the reasons set forth in the Tribal Defendants' Motion and Memorandum in support thereof, the Tribal Defendants and Dernier respectfully request that the Court enter an order compelling all of Defendants' claims to arbitration, or in the alternative, dismiss such claims.

Dated: January 27, 2026

Respectfully Submitted,

DUSTIN DERNIER, STEVE CHRISTENSEN, ANTHONY REIDER, CYDNI WEDDELL, APRIL HERRICK, RYAN KILLS A HUNDRED, KRISTI BIETZ, DAVID ROSS, JOHNATHAN SCHRADER SR.

By: /s/ *Conly J. Schulte*
Conly J. Schulte
Wm. Blake Follis (admission pending)
Aidan Graybill (admission pending)
**Peebles Bergin Schulte & Robinson LLP**
945 Front Street
Louisville, CO 80027
Phone: 303.284.8228
Fax: (916) 441-2067
cschulte@ndnlaw.com
bfollis@ndnlaw.com
agraybill@ndnlaw.com

Kirk Holleyman (admission pending)
**Kirk Holleyman, PC**
4450 Arapahoe Avenue #100
Boulder, CO 80303
(303) 436-1699
kirkholleyman@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2026, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, DISMISS COMPLAINT with the Clerk of the Court using the CM/ECF System, and thereby served upon the following attorneys of record:

**John G. Albanese**
**E. Michelle Drake**
**Marika K. O'Connor Grant**
**Arian B. Keiner**
*Counsel of Record for Plaintiffs*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Phone: (612) 594-5999
Fax: (612) 584-4470
emdrake@bergermontague.com
jalbanese@bergermontague.com
moconnorgrant@bergermontague.com
akiener@bergermontague.com

**Brandon S. Stein**
HUSCH BLACKWELL LLP
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016
(480) 824-7890 – Telephone
(480) 824-7905 – Facsimile
Brandon.Stein@HuschBlackwell.com
*Attorney For Defendant Velocity Ventures Group, LLC dba Infinity Enterprise Lending Systems*

By: /s/ Conly J. Schulte